THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHARLES BOYD OLSON, JANINE OLSON, and MAGGIE COLIN,<br><br>Plaintiffs,<br><br>v.<br><br>UNISON AGREEMENT CORPORATION, a foregin corporation,<br><br>Defendant. | NO. 2:22-cv-01859-RSM<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF COLIN'S DISPUTE**<br><br>**ORAL ARGUMENT REQUESTED** |



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

A. Ms. Colin signed numerous documents to obtain financing from Unison ..... 3

III. ARGUMENT AND AUTHORITY ..... 4

A. The delegation clause in Unison's Homeowner Covenant Agreement is prohibited by federal law ..... 4

1. Unison's HomeOwner Agreement is a mortgage or credit agreement secured by a consumer's home ..... 7

B. The entire arbitration provision is unenforceable under the Dodd-Frank Act ..... 10

C. The arbitration provision was also presented in a procedurally unconscionably manner and is therefore unenforceable ..... 10

D. Ms. Colin reserves all arguments that Unison's entire agreement is substantively unconscionable and the arbitration clause in it is therefore unenforceable ..... 12

IV. CONCLUSION ..... 13



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Attix v. Carrington Mortgage Services, LLC*, 35 F.4th 1284 (11th Cir. 2022) ........ 7

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ........ 13

*Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021 (9th Cir. 2022) ........ 6

*CompuCredit Corp. v. Greenwood*, 565 U.S. 95 (2012) ........ 4

*Debesay v. Security Indus. Specialists, Inc.*, 2021 WL 962549 (W.D. Wash. Mar. 15, 2021) ........ 6

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) ........ 5

*J.A. through Allen v. Microsoft Corp.*, 2021 WL 1723454 (W.D. Wash. Apr. 2, 2021) ........ 7

*Kindred Nursing Ctrs. Ltd. v. Clark*, 581 U.S. 246 (2017) ........ 10

*Lyons v. PNC Bank, N.A.*, 26 F.4th 180 (4th Cir. 2022) ........ 5

*New Prime Inc. v. Oliveira*, 139 S. Ct. 532 (2019) ........ 5, 6

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) ........ 5, 7

*Stofleth v. Morgan Stanley Smith Barney, LLC*, 2021 WL 3630510 (W.D. Wash. Aug. 17, 2021) ........ 6



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

## STATE CASES

*Adler v. Fred Lind Manor*,
153 Wash.2d 331, 103 P.3d 773 (2004) ........ 11

*Burnett v. Pagliacci Pizza, Inc.*,
196 Wash.2d 38, 470 P.3d 486 (2020) ........ 11

*Kendrick v. Davis*,
75 Wash.2d 456, 452 P.2d 222 (1969) ........ 9

*Morrill v. Title Guar. & Surety Co.*,
94 Wash. 258, 162 P. 360 (1917) ........ 8

*Phillips v. Blaser*,
13 Wash.2d 439, 125 P.2d 291 (1941) ........ 13

*Rustad Heating & Plumbing Co. v. Waldt*,
91 Wash.2d 372, 588 P.2d 1153 (1979) ........ 8

*Zuver v. Airtouch Comms., Inc.*,
153 Wash.2d 293, 103 P.3d 753 (2004) ........ 11

## FEDERAL RULES AND STATUTES

12 C.F.R. § 1026.36(h) ........ 5

9 U.S.C. § 2 ........ 4, 10

9 U.S.C. § 3 ........ 4

15 U.S.C. § 1602(dd)(5) ........ 8

15 U.S.C. § 1602(f) ........ 8

15 U.S.C. § 1936c(e) ........ 12

15 U.S.C. § 1639c(e)(1) ........ *passim*

15 U.S.C. § 1639(c)(e)(3) ........ 7

25 U.S.C. § 1621e(c) ........ 6



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**STATE STATUTES**

Wash. Rev. Code § 61.020 *et seq* .................... 9

Wash. Rev. Code § 61.24.005(3) .................... 10

Wash. Rev. Code § 61.24.020 .................... 10

**OTHER AUTHORITIES**

18 Wash. Prac., Real Estate § 20.1. .................... 10

18 Wash. Prac., Real Estate § 20.2 .................... 8

Wash. Practice, Contract Law & Practice § 19:42 .................... 9

Jenny Schuetz, *Rethinking homeownership incentives to improve household financial security and shrink the racial wealth gap*, Brookings Institute, December 9, 2020 .................... 12



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

## I. INTRODUCTION

Maggie Colin is an 85-year-old retiree. She worked for more than 51 years as a nurse. It was only after she retired at the age of 74 that she was able to purchase her first home—a condo on Aurora Avenue in Seattle. In 2019, Ms. Colin needed dental implants but could not afford the $60,000 price tag. At about the same time, Unison mailed Ms. Colin a flyer promoting its financial product by promising she could "access the equity locked in [her] home." Ms. Colin thought Unison was making a loan that she could repay over time. This is unsurprising because on the day she signed the Unison HomeOwner Agreement, Unison's escrow agent gave her a "Closing Statement" stating that her "Loan Amount" was $60,000 and identifying "Unison Home Ownership Investors" as her "Lender." It was only later when she contacted a bank about potentially refinancing her condo that Ms. Colin learned that Unison's HomeOwner Agreement made it virtually impossible to do so. She contacted Unison and learned that terminating the HomeOwner Agreement would cost her hundreds of thousands of dollars, despite Unison having loaned her $60,000 less than three years earlier. Unison now holds the purse strings to Ms. Colin's financial security in retirement.

Ms. Colin is not the only victim of Unison's predatory lending practices. Her co-plaintiffs Charles and Janine Olson fell victim to the scheme as well, ending up in a situation where Unison claims to own 70% of the value of a home the Olsons have owned since 1986, and which they share with their disabled adult son.

Unison makes no argument that the Olsons' claims are subject to arbitration because the form of Unison HomeOwner Agreement that they signed does not include an arbitration provision that even arguably covers the claims at issue in this case (Mot. at 1 fn. 1). The same is true for all other Washington homeowners who are proposed class members and contracted with Unison before June 2019, signing HomeOwner Agreements containing only the narrower arbitration clause included in the Olsons' HomeOwner Agreement. Thus, regardless of the outcome of Unison's motion, the Olsons' Washington Consumer Protection Act claims (including their class claims) will remain in this Court.



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Turning to Ms. Colin's CPA claims, they are not subject to mandatory arbitration either because federal law forbids the inclusion of arbitration clauses, including delegation provisions calling for arbitration of arbitrability, in mortgage documents like Unison's. The arbitration clause was also presented in a procedurally unconscionable manner—Unison had Ms. Colin sign numerous documents purporting to detail the material terms of her transaction with Unison and constituting an "acceptance" of its financing offer. None of those documents mentioned arbitration. Unison's arbitration clause was not included in any document presented to Ms. Colin until she met with a notary to sign Unison's closing documents and Deed of Trust. The Court should therefore deny Unison's motion to compel Ms. Colin to take her claims to arbitration.

## II. FACTUAL BACKGROUND

Maggie Colin is an 85-year-old retiree. Dkt. No. 1-1 (Complaint) ¶ 4.44. She worked for more than 51 years as a nurse specializing in dialysis. *Id.* Ms. Colin rented throughout her working life. *Id.* It was only after she retired at the age of 74 that she was able to purchase her first home—a condo on Aurora Avenue in Seattle. *Id.* ¶¶ 4.44–4.45.

In 2019, Ms. Colin faced financial difficulty because she needed dental implants that cost approximately $60,000. *Id.* ¶ 4.47. Unison mailed Ms. Colin a flyer promoting its financial product by promising she could "access the equity locked in [her] home." *Id.* ¶ 4.48. Ms. Colin thought Unison was making a loan that she could repay over time. *Id.* ¶ 4.55. When she signed the Unison HomeOwner Agreement, Unison's escrow agent gave her a "Closing Statement" listing her "Loan Amount" as $60,000 and identifying "Unison Home Ownership Investors" as her "Lender." Declaration of Blythe H. Chandler in support of response to Unison's motion to compel arbitration ("Chandler Decl."), Ex. 1 (Vantage Closing Statement). But when Ms. Colin contacted a bank about potentially refinancing her condo, she learned that Unison's HomeOwner Agreement made it virtually impossible to do so. *Id.* ¶ 4.56. Ms. Colin then contacted Unison and learned that she could not pay Unison back over time and that her only



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

option, terminating the HomeOwner Agreement, would cost her hundreds of thousands of dollars, despite Unison having loaned her $60,000 less than three years earlier. *Id.* ¶ 4.57.

**A. Ms. Colin signed numerous documents to obtain financing from Unison.**

Unison offered Ms. Colin a Unison HomeOwner Agreement on November 4, 2019. Dkt. No. 10 (Haugen Decl.) ¶ 10. Unison required Ms. Colin to sign a series of documents including: an offer letter and acknowledgment of acceptance, Unison's Conditions of Offer, Unison's Important Information Notice and Total Unison Cost Estimate, Unison's Notice and Acknowledgment Regarding Spouses, Partners and Co-Occupants, and a Schedule of Debts to be Paid at Closing. Haugen Decl. ¶ 10, Ex. 3. Ms. Colin singed the acceptance documents on November 5, 2019. *Id.* None of Unison's acceptance documents made any mention of an arbitration provision. *Id.*

The nine-page Important Information Notice Ms. Colin signed on November 5 describes many terms included in the Unison HomeOwner Agreement. *Id.*, Ex. 3 at 2 (section headed **The Unison Homeowner Covenant Agreement**) (emphasis in original). The Notice sets out that the Agreement will require the homeowner to maintain the condition of her property and pay her mortgage and taxes, will spell out the conditions under which Unison can take action to protect its interest in the property, the fees Unison may charge, and the steps by which the agreement may terminate. *Id.* The Notice creates the overall impression that it discloses all important terms of the transaction, but makes no mention of arbitration. *Id.* No one from Unison contacted Ms. Colin by phone to explain any other terms related to her financing. *Id.* ¶ 3.

Eleven days later, Ms. Colin signed before a notary the five additional documents, which "together" are Ms. Colin's HomeOwner Agreement with Unison. Haugen Decl., ¶¶ 3-8.

The lengthiest document Ms. Colin signed is the HomeOwner Covenant Agreement. Haugen Dec., Ex. 1-2. The document is 22 pages long with signatures appearing on page 22. There are no places for initials or signatures on any other page in the Covenant Agreement. The arbitration provision Unison seeks to enforce is on pages 20-21. *Id.* at 20-21.



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Ms. Colin also signed before Unison's notary a 12-page Deed of Trust. Haugen Dec., Ex. 1-3. She initialed each page of the Deed of Trust and signed the last page. *Id.* The Deed of Trust gives Unison the power to "foreclose this Unison HomeOwner Security Interest as a mortgage" through a trustee's sale as permitted under "applicable law." *Id.* at 5 (section 7). Unison's escrow agent gave Ms. Colin a "Closing Statement" listing her "Loan Amount" as $60,000 and identifying "Unison Home Ownership Investors" as her "Lender." Chandler Decl., Ex. 1 (Vantage Closing Statement).

## III. ARGUMENT AND AUTHORITY

The Federal Arbitration Act makes a written provision to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 authorizes a court to stay proceedings until completion of an arbitration, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration" under the agreement at issue. 9 U.S.C. § 3. This suit is not referable to arbitration because federal law prohibits arbitration clauses in mortgage documents like Unison's where obligations are secured by a Deed of Trust on the consumer's home. Because a delegation of questions of arbitrability to an arbitrator is nothing more than an agreement to arbitrate controversies about arbitrability, the delegation clause in Unison's HomeOwner Agreement is unenforceable.

### A. The delegation clause in Unison's Homeowner Covenant Agreement is prohibited by federal law.

The Federal Arbitration Act's requirement that written agreements to arbitrate be enforced according to their terms may be "overridden by a contrary congressional command." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012). While language that merely creates a cause of action is not such a command, *id.* at 100–01, statutes that say arbitration clauses in certain types of agreements are not enforceable override the FAA, *id.* at 103–04. *CompuCredit* does not say that the contrary congressional command must appear in the statute under which the plaintiff is suing. *See id.*



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

The Dodd-Frank Act's amendments to the Truth in Lending Act contain a clear congressional command: "No residential mortgage loan" secured "by the principal dwelling of the consumer may include terms which require arbitration or any other nonjudicial procedure as the method for resolving any controversy." 15 U.S.C. § 1639c(e)(1). The Consumer Financial Protection Bureau's implementing Regulation Z similarly prohibits requirements to arbitrate "any controversy" in a "contract or other agreement for a consumer credit transaction secured by a dwelling (including a home equity line of credit secured by the consumer's principal dwelling)." 12 C.F.R. § 1026.36(h). The Dodd-Frank Act "prohibits consumer agreements related to residential mortgage loans from requiring the arbitration of claims." *Lyons v. PNC Bank, N.A.*, 26 F.4th 180, 183 (4th Cir. 2022).

Unison will undoubtedly respond that whether its product is a mortgage or a consumer credit transaction secured by a dwelling, such that the Dodd-Frank prohibition applies, is a question of arbitrability that its HomeOwner Agreement delegates to an arbitrator.

"Gateway" questions of arbitrability, including whether an arbitration clause is enforceable, may be delegated to an arbitrator when the arbitration clause contains a term that is a clear and unmistakable delegation of arbitrability to the arbitrator. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "An agreement to arbitrate gateway issues is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010). Unison's HomeOwner Agreement purports to delegate to an arbitrator "the arbitrability of any Claim." Haugen Decl., Ex. 1-2 at § 20.3. Ms. Colin specifically challenges that delegation clause because Dodd-Frank's broad prohibition on arbitration of "any controversy" relating to mortgage loans secured by the consumer's home, 15 U.S.C. § 1639c(e)(1), precludes enforcement of a delegation clause that calls for arbitration of a controversy over arbitrability.

"While a court's authority under the [Federal] Arbitration Act to compel arbitration may be considerable, it isn't unconditional." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537 (2019).



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

"The parties' private agreement may be crystal clear and require arbitration of every question under the sun, but that does not necessarily mean the Act authorizes the court to stay litigation and send the parties to an arbitral forum." *Id.* at 537–38. The Supreme Court applied those principles in *New Prime* and concluded that despite a delegation clause in an agreement between the parties, the court had to address the plaintiff's argument that the contract between the parties was not subject to the FAA. *Id.* at 538. The same analysis applies here, where Ms. Colin argues that the delegation clause itself cannot be enforced because the Dodd-Frank Act contains a contrary congressional command prohibiting agreements to arbitrate "any controversy" in mortgages or credit contracts secured by the consumer's home. 15 U.S.C. § 1639c(e)(1). Just as in *New Prime*, this Court—not an arbitrator—must resolve Ms. Colin's challenge to the delegation clause found in Unison's HomeOwner Agreement.

*Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021 (9th Cir. 2022), is not to the contrary. There, the Chickasaw Nation claimed that arbitration *procedures* in its contract with Caremark hindered the tribe's right of recovery under a federal statute. *Id.* at 1033. The statutory language at issue barred contract provisions that "prevent or hinder the right of recovery of [a tribe]." *Id.* (quoting 25 U.S.C. § 1621e(c)). The court found that the question of whether the arbitration clause is a prohibited hinderance was delegated to the arbitrator. In contrast, the Dodd-Frank Act explicitly prohibits the enforcement of any arbitration agreement in mortgage loans. Because a delegation clause is just an arbitration agreement, they are prohibited by the Dodd-Frank Act. Ms. Colin makes a specific challenge to the delegation clause itself.

Unison cites unpublished orders compelling arbitration in cases where the party opposing arbitration made no specific challenge to a delegation clause. *See Stofleth v. Morgan Stanley Smith Barney, LLC*, 2021 WL 3630510, at *2 (W.D. Wash. Aug. 17, 2021) ("Because plaintiff has not challenged the unconscionability of the delegation provision specifically, the Court treats this provision as valid and will enforce it."); *Debesay v. Security Indus. Specialists, Inc.*, 2021 WL 962549, at *2 (W.D. Wash. Mar. 15, 2021) ("the Court only need reach the question of whether Ms. Debesay challenges the delegation provision specifically, which she



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

does not”). Those orders are straightforward applications of *Rent-A-Center*. They provide no guidance here because Ms. Colin does specifically challenge Unison’s delegation clause on the grounds that the Dodd-Frank Act prohibits requirements to arbitrate “any controversy”—as opposed to only “claims”—in mortgages and consumer credit agreements secured by the consumer’s home. Here, the controversy between the parties over arbitrability—and the purported requirement to arbitrate that issue found in Unison’s delegation clause—is impermissible under the statute. Similarly, in *J.A. through Allen v. Microsoft Corp.*, 2021 WL 1723454, at *7–8 (W.D. Wash. Apr. 2, 2021), the Court rejected plaintiff’s unconscionability challenge to a delegation clause in a video game contract. *J.A.* does not address any argument about whether a delegation clause is permitted at all under federal law.

In reply, Unison may point to the Eleventh Circuit’s decision in *Attix v. Carrington Mortgage Services, LLC*, 35 F.4th 1284 (11th Cir. 2022). Ms. Colin respectfully submits that the Eleventh Circuit’s non-binding analysis of what constitutes a challenge to a delegation clause specifically as opposed to the whole arbitration clause is incorrect. The Dodd-Frank Act explicitly prohibits the enforcement of any arbitration agreement in mortgage loans, and a delegation clause is just an arbitration agreement. An argument that a delegation clause itself is expressly prohibited by the Dodd-Frank Act is exactly the sort of challenge the Supreme Court itself resolved in *New Prime*, 139 S. Ct. at 537.

*Attix* is also distinguishable because there the homeowner relied on 15 U.S.C. § 1639(c)(e)(3)—a different provision than the one Ms. Colin points to—and argued that an arbitration clause was unenforceable. *Id.* at 1306. The section of the statute at issue in *Attix* does not have the “any controversy” language found in section 1639(c)(e)(1), and on which Ms. Colin relies to challenge Unison’s delegation clause.

1. Unison’s HomeOwner Agreement is a mortgage or credit agreement secured by a consumer’s home.

A “residential mortgage loan” means “any consumer credit transaction that is secured by a mortgage, deed of trust, or other equivalent consensual security interest on a dwelling.”



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

15 U.S.C. § 1602(dd)(5). The statute defines "credit" to mean "the right granted by a creditor to a debtor to defer payment of a debt." *Id.* § 1602(f). Unison claims that its HomeOwner Agreement is not credit because there are circumstances under which Ms. Colin might not have to repay all of the money Unison advanced in its Initial Investment. But careful reading of Unison's form agreements demonstrates that those circumstances are extremely unlikely to occur. For example, to exercise a "Special Termination" within the first five years after receiving Unison's financing, Ms. Colin must pay back at least the Unison Initial Investment Payment. Haugen Decl., Ex. 3 at 9 (Dkt. No. 10 at ECF page 82); *see also id.* at 13 (Dkt. No. 10 at ECF page 86) (examples of payments to Unison reflecting just one of 5 scenarios where Unison does not recover most of its Initial Investment Payment). Moreover, mortgage lenders in Washington can always lose the money they loan a consumer. Because deficiencies are not permitted when the lender nonjudicially forecloses under a deed of trust, that is a likely outcome when the value of a property declines dramatically. That Unison could lose its investment is therefore not sufficient to distinguish its product from a mortgage loan.

Washington law confirms that Unison's product is indeed a mortgage loan. A deed of trust that gives a trustee the power to sell a consumer's home in a non-judicial foreclosure sale at the direction of the beneficiary is a mortgage. *See* 18 Wash. Prac., Real Estate § 20.2 ("[A] deed of trust is a three-party, power of sale mortgage."). It is "well established in Washington and elsewhere, that a deed that is given as security for an obligation is a mortgage." *Id.* The Washington Supreme Court has expressly held that a statutory deed of trust is "indeed a species of mortgage." *Rustad Heating & Plumbing Co. v. Waldt*, 91 Wash.2d 372, 376, 588 P.2d 1153, 1155 (1979). The Washington Supreme Court has also held that "a nonstatutory trust deed given as security is a mortgage." *Id.* (citing *Morrill v. Title Guar. & Surety Co.*, 94 Wash. 258, 162 P. 360 (1917)). The Deed of Trust Unison recorded on Ms. Colin's home was a mortgage, regardless of whether it was statutory or nonstatutory.

Unison's use of its Deed of Trust authorizing a non-judicial foreclosure sale of Ms. Colin's home to secure her obligations to Unison reflects that its product is functionally a mortgage



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

loan. It also shows that the HomeOwner Agreement not simply an "option" contract. There is no authority suggesting that a financial institution can enforce an option to purchase property by selling the subject property at a non-judicial foreclosure sale. *See e.g.,* Wash. Practice, Contract Law & Practice § 19:42 (short option contract form containing no reference to the optionee taking a security interest in the property secured by a deed of trust). As the Washington Supreme Court has explained: "An instrument may in form be a deed or an assignment, but, if the intent is to use the property as security, it will be a mortgage." *Kendrick v. Davis*, 75 Wash.2d 456, 460, 452 P.2d 222, 225–26 (1969).

That is what Unison's document do. Ms. Colin's "*performance and payment* of the *obligations*" created by Unison's agreements are secured by a Deed of Trust. Haugen Decl., Ex. 1-3 (Deed of Trust) at § 2 (identifying the "Secured Obligations") (emphasis added). Unison's Deed of Trust conferred on Unison, as the Beneficiary, the power to accelerate all sums due under its agreements and direct the Trustee to "foreclose this Unison HomeOwner Security Interest *as a mortgage*" through a non-judicial foreclosure sale. Deed of Trust at § 7 (emphasis added). Even Unison's documents characterize the transaction as a mortgage loan. The "Closing Statement" Unison's escrow company provided to Ms. Colin states that her "Loan Amount" is $60,000 and that "Unison Home Ownership Investors" is her "Lender." Chandler Decl., Ex. 1.

Unison's HomeOwner Agreement, including its Deed of Trust, created a mortgage secured by Ms. Colin's home. And because Unison's delegation clause appears in a mortgage or consumer credit agreement secured by a consumer's home, it is an unenforceable agreement to arbitrate under the Dodd-Frank Act. 15 U.S.C. § 1639c(e)(1).

Unison's Deed of Trust gives it the power to "foreclose this Unison HomeOwner Security Interest as a mortgage" through a trustee's sale as permitted under "applicable law." Haugen Decl., (Deed of Trust) at 5. The law authorizing a trustee to foreclose a deed of trust as a mortgage by sale on property located in the state of Washington is Washington's Deed of Trust Act, Wash. Rev. Code § 61.020 *et seq.* There is no other "applicable law" to which Unison's Deed of Trust can refer because the statute is the only way that Washington permits mortgaged



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

land to be sold under a power of sale. 18 Wash. Prac., Real Estate § 20.1. The Deed of Trust Act confirms that Unison's HomeOwner Agreement is a mortgage. Under the statute, "Borrower" means a person "that is liable for all or part of the obligations secured by the deed of trust," Wash. Rev. Code § 61.24.005(3). The Act provides that: "Except as provided in this chapter, a deed of trust is subject to all laws relating to mortgages on real property." *Id.* § 61.24.020. It provides that county auditors "shall record the deed as a mortgage." *Id.* Thus, despite Unison's attempts to structure its agreements to avoid lending rules, Unison's HomeOwner Agreement with Ms. Colin is a mortgage loan.

**B. The entire arbitration provision is unenforceable under the Dodd-Frank Act.**

If the Court agrees that the delegation provision in Unison's HomeOwner Agreement is unenforceable under the Dodd-Frank Act, it should then consider Ms. Colin's challenge to the rest of the arbitration clause. The rest of the clause is unenforceable because it appears in a mortgage loan or consumer credit agreement secured by a consumer's home, as discussed above. 15 U.S.C. § 1639c(e)(1). Therefore, Unison's motion to compel arbitration should be denied, and Ms. Colin should be permitted to pursue her claims in this Court.

**C. The arbitration provision was also presented in a procedurally unconscionably manner and is therefore unenforceable.**

The Federal Arbitration Act makes a written provision to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Arbitration agreements may be voided by generally applicable contract defenses, including unconscionability. *See Kindred Nursing Ctrs. Ltd. v. Clark*, 581 U.S. 246, 251 (2017) ("A court may invalidate an arbitration clause based on generally applicable contract defenses like fraud or unconscionability"). Whether an arbitration provision (as opposed to the contract in which it appears) is procedurally unconscionable is an issue the Court should address if it agrees with Ms. Colin that the delegation clause is not enforceable for the reasons discussed above.



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Here, Washington unconscionability law governs. "Procedural unconscionability applies to impropriety during the formation of the contract; substantive unconscionability applies in cases where a term of the contract is alleged to be one-sided or overly harsh." *Burnett v. Pagliacci Pizza, Inc.*, 196 Wash.2d 38, 54, 470 P.3d 486, 494 (2020). "Either is sufficient to void the agreement." *Id.*

The key inquiry for finding procedural unconscionability is whether the weaker party "lacked meaningful choice." *Id.* at 56, 470 P.3d at 496; *Zuver v. Airtouch Comms., Inc.*, 153 Wash.2d 293, 304, 103 P.3d 753 (2004). While adhesion contracts are not necessarily procedurally unconscionable, it is relevant that a standard form contract was drafted by one party and presented to the other on a take it or leave it basis when there is not true equality of bargaining power between the parties. *Adler v. Fred Lind Manor*, 153 Wash.2d 331, 347-48, 103 P.3d 773, 782–83 (2004). To determine whether a person lacked meaningful choice when presented with an adhesion contract, courts consider all the circumstances surrounding signature on the agreement, including whether the arbitration term was hidden and whether the weaker party had a reasonable opportunity to understand the terms of the agreement. *Adler*, 153 Wash.2d at 349–50, 103 P.3d at 783–84.

Unison's agreements are standard form contracts that were presented to Ms. Colin on a take it or leave it basis. Each document has an identifying "Form" number and revision date listed on the lower right corner or it. Haugen Decl., Exs. 1-1, 1-2, 1-3, 1-4, 1-5.

Unison's arbitration terms were hidden from Ms. Colin because the multitude of form agreements Unison required Ms. Colin to sign to accept its financing offer on November 5, 2019 made no mention of arbitration. Haugen Decl., Ex. 3. The nine-page Important Information Notice details numerous terms included in the Unison HomeOwner Agreement but says nothing about arbitration. *Id.*, Ex. 3 at 7-15 (Dkt. No. 10, ECF pg. nos. 80-88). Unison never presented the arbitration term to Ms. Colin until 10 days later when she met with a notary to sign additional documents. By that point she had already signed forms accepting the offer. Haugen Decl., Ex. 3 (acceptance documents signed on November 5, 2019).



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Even then, the arbitration clause was buried on the last page of the longest document she signed, Unison's HomeOwner Covenant Agreement. Haugen Dec., Ex. 1-2. The document is 22 pages long with signatures appearing on page 22. The arbitration provision Unison seeks to enforce is on pages 20-21. *Id.* at 20-21. While other documents Unison had the notary direct Ms. Colin to sign required her to initial every page, *see* Haugen Decl., Ex. 1-3, the HomeOwner Covenant Agreement did not. But most importantly, the pressure inherent in the situation of meeting with a notary to sign documents related to financing that a consumer has already accepted deprives the consumer of a reasonable opportunity to understand lengthy form documents before signing them. In considering all the circumstances surrounding Unison's presentation of the arbitration term to Ms. Colin, she lacked meaningful choice about whether to accept the arbitration clause in particular. This type of procedural unconscionability cannot be cured by any severance of unfair terms.

Moreover, a reasonable consumer does not expect to find an arbitration clause buried at the end of mortgage documents because, as discussed above, they are impermissible under federal law. 15 U.S.C. § 1936c(e).

**D. Ms. Colin reserves all arguments that Unison's entire agreement is substantively unconscionable and the arbitration clause in it is therefore unenforceable.**

Home equity is the single largest asset for many lower- and middle-income individuals and families. *See* Jenny Schuetz, *Rethinking homeownership incentives to improve household financial security and shrink the racial wealth gap*, Brookings Institute, December 9, 2020.[1] Unison takes advantage of homeowners facing financial challenges—offering a financial product that gives Unison the ability to skim the vast majority of the homeowner's equity for a minimal initial cash amount. Unison characterizes its product as an "investment" rather than a loan in an attempt to avoid lending requirements and usury laws. But Washington courts look with extreme suspicion upon agreements like Unison's that attempt to circumvent lending laws

[1] *Available at* https://www.brookings.edu/research/rethinking-homeownership-incentives-toimprove-household-financial-security-and-shrink-the-racial-wealth-gap/



TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

in transactions secured by real property. *See, e.g.*, *Phillips v. Blaser*, 13 Wash.2d 439, 445, 125 P.2d 291 (1941) (holding transaction created equitable mortgage where "[t]o hold otherwise would permit the extraction from [the property owner] of usurious interest or defeat his equity of redemption and force him to relinquish his rights in the real property without consideration, which would be unconscionable.").

Should this Court compel arbitration, Ms. Colin reserves for the arbitrator all substantive unconscionability challenges to the Unison HomeOwner Agreement as a whole, which would void its arbitration provision. Ms. Colin does not ask this Court to address the substantive unconscionability of the entire agreement now because under *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006), challenges to the entire contract containing an arbitration clause are reserved for the arbitrator.

## IV. CONCLUSION

Ms. Colin respectfully requests that the Court find that the delegation clause in Unison's HomeOwner Agreement is unenforceable under the Dodd-Frank Act and that the remainder of the arbitration clause is unenforceable because it too is impermissible under the Dodd-Frank Act and because it was presented in a procedurally unconscionable manner.

RESPECTFULLY SUBMITTED AND DATED this 13th day of February, 2023.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/Blythe H. Chandler, WSBA #43387
Beth E. Terrell, WSBA #26759
Email: bterrell@terrellmarshall.com
Blythe H. Chandler, WSBA #43387
Email: bchandler@terrellmarshall.com
Elizabeth A. Adams, WSBA #49175
Email: eadams@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Umar I. Gebril, WSBA #58227
Email: umar@cascade-law.com
Joseph W. Moore, WSBA #44061
Email: joseph@cascade-law.com
CASCADE LAW PLLC
2707 Colby Avenue, Suite 1420
Everett, Washington 98201
Telephone: (425) 998-8999

*Attorneys for Plaintiffs*